UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAY MICHAEL CARBONE,<br><br>Defendant. | Case No. 1:20-cr-00237-DCN-1<br><br>**MEMORANDUM EXPLAINING RELEVANT CONDUCT RULING** |

## I. INTRODUCTION

Defendant Clay Michael Carbone was convicted of selling drugs on June 18, 2019, to a Human Confidential Source ("HCS"). The Government sought to use a second drug transaction, on July 24, 2019 (the "July 24 transaction"), as relevant conduct for sentencing purposes. Dkt. 48, at 4. The Presentence Investigation Report included the relevant conduct and Carbone objected. Dkt. 51. The base offense level without the relevant conduct is 12, with the relevant conduct it is 28.

Sentencing in this case begin on May 16, 2022. Evidence was presented by the Government on the relevant conduct issue. Argument was also made on the relevant conduct issue and the Court continued sentencing and asked the parties to file supplemental briefs addressing certain issues raised during oral argument. They did. Dkts. 57, 58. Between the arguments already made, the supplemental briefs on the issue, and the testimony presented, the Court ruled on June 3, 2022, at the continued Sentencing hearing, that relevant conduct applied to the second drug transaction and Carbone was sentenced

MEMORANDUM EXPLAINING RELEVANT CONDUCT RULING - 1

using the base offense level of 28.

The purpose of this Memorandum is to provide a reasoned explanation for determining that the second drug transaction constituted relevant conduct.

## II. BACKGROUND AND LEGAL STANDARD

As part of pleading guilty to Distribution of Heroin, Carbone entered into a plea agreement with the Government in which he understood the Government would advocate for an increased sentence based on the methamphetamine he sold from his residence on July 24, 2019. Dkt. 37, at 7. However, Defendant did not waive his right to dispute the Government's factual allegations. *Id*. at 7–8. He retained the right to argue that the Court cannot consider any non-proven facts as relevant conduct. *Id*. At the original sentencing hearing, the Government put on testimony about the July 24 transaction.

Generally, due process does not require a higher standard of proof than preponderance of the evidence when determining relevant conduct. *United States v. Felix*, 561 F.3d 1036, 1045 (9th Cir. 2009). However, when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction–as determined by the disproportionate impact test—due process requires that the Government prove the facts underlying the enhancement by clear and convincing evidence. *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999), *cert. den., McKendrick v. United States,* 528 U.S. 1163(2000).

Here, the "relevant conduct" alleged by the Government will increase Carbone's base offense level from 12 to 28. Under factor 5 of the disproportionate impact test, an increase in levels of four or more necessitates proving the underlying facts by clear and

convincing evidence. *U.S. v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000).[1] The testimony in this case of relevant conduct must, therefore, be considered under a clear and convincing evidence standard.

### III. DISCUSSION

The Court must first determine whether the evidence of the alleged methamphetamine sale is clear and convincing before deciding if such conduct is relevant to the June 2019 heroin sale. Carbone alleges there is no clear and convincing evidence of the July 24 transaction or that he participated in that transaction because the scope of evidence provided relies solely on the credibility of the CHS, and the CHS is "untrustworthy." Carbone's point is well taken, but only to a degree.

The CHS admitted to lying to police officers on other previous occasions and was also admittedly using drugs during his period as an informant. Those facts certainly impact his credibility. However, the lack of credibility of the CHS in the past is offset by the fact that the transaction did in fact occur—drugs were exchanged for cash; the fact that it occurred at Carbone's listed residence; and the fact that Carbone's car was in the driveway at the time of the transaction. Importantly, the CHS testified that he was not aware the FBI camera he was wearing had broken just prior to the methamphetamine sale. He did not

---

[1] The factors to be considered are: (1) Does the enhanced sentence fall within the maximum sentence for the crime alleged in the indictment? (2) Does the enhanced sentence negate the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment? (3) Do the facts offered in support of the enhancement create new offenses requiring separate punishment? (4) Is the increase in sentence based on the extent of a conspiracy? (5) Is the increase in the number of offense levels less than or equal to four? and (6) Is the length of the enhanced sentence more than double the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence? *Valensia,* at 1182.

know where the recording device was located or how to turn it on off. Therefore, he had no reason to lie about Carbone's identity because he was under the impression the FBI already had evidence regarding Carbone's identity from the video recording of the transaction.

Additionally, the testimony shows the CHS did a lot of controlled buys for law enforcement: six or eight on the federal level alone. Carbone cannot rebut the fact that the methamphetamine was sold out of his residence and the fact that his car was in the driveway of that residence. The CHS went into the garage with cash and came out with drugs. Those facts are undisputed. So is the existence of the audio recording. While Carbone's name was never stated during the course of the transaction, and there is no camera evidence to reveal him, the overall evidence is clear and convincing that Carbone was the seller on July 24. Because the Court finds that Carbone sold drugs to the CHS on July 24, the Court must next determine whether that transaction is relevant conduct in this case for sentencing purposes.

The test to determine relevant conduct in drug cases is an evaluation of the "similarity", "regularity", and "temporal proximity" of the alleged conduct. *U.S. v. Hahn*, 960 F.2d 903, 910 (9th Cir. 1992). Where one factor may be missing or lesser, courts must look for a stronger presences of the others. *Id.* The broad standard of relevant conduct related to drug cases has been established because "drug distribution offenses 'often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.'" *Id*. at 910.

Carbone argues the July 24 transaction was not part of the same course of conduct

or common scheme or plan as the offense to which he pled guilty. In support of this argument, he states there was a lack of similarity, regularity, and temporal proximity between the transactions because the offenses occurred at different places, the products and quantity sold were different, and there was a five-week separation period. Carbone also argues that two separate drug-selling instances are not necessarily linked as a single course of conduct. However, the Government argues the opposite, stating that relevant conduct for drug cases has been broadly defined. The Court will look at each of the three factors. In doing so, it is important to note that both 9th Circuit decisions and the guidelines make it clear that conduct post-arrest can be relevant conduct if the three factors warrant it. *United States v. Webster*, 996 F.2d 209, 212 (9th Cir. 1993) ("[T]he amended guidelines permit district courts to consider all relevant conduct, including collateral conduct beyond the charged offense."); *see also*, United States Sentencing Guidelines § 1B1.3(a)(2).

The Court will analyze each element in turn.

1.    **Similarity.** Carbone argues that his "plan"—as part of a common scheme—was to continue supporting his own heroin addiction by selling smaller quantities of the drug, not to just "sell[] any drug he could," including larger quantities of meth. Dkt. 57, at 8. However, the two are not mutually exclusive; it can be reasonably inferred that selling larger quantities of meth will provide more money to support a heroin addiction. That being said, the two transactions must be "similar" under Guideline § 1B1.3. This question is difficult to analyze because there is dissimilarity under the sentencing guidelines for selling smaller amounts of heroin versus selling a large amount of methamphetamine. Some guidance is provided by *United States v. Ladum*, 141 F.3d 1328, 1347 (9th Cir.1998)

(stating that a sufficient degree of similarity between a prior conviction and current offense requires comparing the elements of the prior offense with the current offense, and examining the actual conduct underlying the two crimes).

Here, the "actual conduct" would be selling a smaller amount of heroin versus selling a larger amount of methamphetamine. *United States v. Caldwell* found that the defendant's offenses were similar (and therefore "relevant"), because the defendant was selling the same drug in the same city with the same accomplices. 585 F.3d 1347 (10th Cir. 2009); *see also United States v. Gilbert*, 173 F.3d 974, 978 (6th Cir. 1999) (finding that defendant's repeated sales of cocaine qualified as relevant conduct partly because all sales took place in the same location). In this case, Carbone was selling to the same person in the same city, but was not selling the same drug (and while he sold in the same city, he did not sell at the same location). However, the U.S. Supreme Court upheld a sentencing for a marijuana conviction that included using as relevant conduct the sale of cocaine. *See Witte v. U.S.*, 115 S. Ct. 2199 (1993). So, clearly, the sale does not have to include the same type of drug to be considered similar. Therefore, the question of similarity weighs in favor of the Government.

2. **Regularity.** Defendant argues there is no regularity between the two transactions because "[R]egularity is 'completely absent' where the government shows only one other offense." Dkt. 57, at 6 (quoting *United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018) (cleaned up). The cases Carbone cites for this proposition, however, come from outside the Ninth Circuit and are not binding. Importantly, the 9th Circuit addressed this matter in *Hahn* when it stated that "specific, repeated events outside the

offense of conviction must be identified. Regularity is wanting in the case of a solitary, temporally remote event and therefore such an event cannot constitute relevant conduct without a strong showing of substantial similarity." 960 F.2d at 911. Thus, Defendant's "solitary" methamphetamine sale may not indicate regularity if the two sales are found to be temporally remote.

As will be explained in the following section, the Court finds these two sales *are* temporally proximate and, therefore, the regularity element also weighs in favor of the Government—albeit not as strongly.

3. **Temporal proximity.** First, the Government argues that a five-week period between transactions is not too temporally removed to negate proximity. Dkt. 58, at 6-8. This argument is persuasive in light of *United States v. Parlor* 2 F.4th 807, 810-811 (9th Cir.) *cert. denied*, 142 S. Ct. 623 (2021). In *Parlor*, the Ninth Circuit held that "the concepts, 'common scheme or plan' or 'same course of conduct' by their very nature contemplate conduct that may occur over a period of time." *Id*. at 812–13. Therefore, so long as the transactions were part of a "common scheme or plan" or the "same course of conduct," a five-week difference between the transactions does not mean the transactions were too far temporally removed.

Temporal proximity of five weeks, while it must be taken in context, is within the boundaries of "relevant." Assuming Carbone's heroin addiction was not alleviated over the course of five weeks and he was selling to sustain his habit, the five-week window is not significantly removed in time from the June transaction to negate its inclusion as relevant conduct.

Having reviewed the testimony, briefs, and argument of counsel, the Court concluded the July 24 transaction of meth was relevant conduct and must be considered in sentencing under the guidelines. Carbone's objection as to relevant conduct is overruled.

DATED: June 7, 2022

David C. Nye
Chief U.S. District Court Judge